PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1204
_____

BRIAN A. DAVIS; FREDERICKA K. BECKFORD,
                                    Appellants

v.

CHARLES E. SAMUELS, JR., Director, Federal Bureau of
Prisons; FEDERAL BUREAU OF PRISONS
ADMINISTRATOR, Bureau of Prisons Privatization
Management Branch; G. C. WIGEN, Former Warden,
Moshannon Valley Correctional Center;
S. M. KUTA, Current Warden, Moshannon Valley
Correctional Center; THE GEO GROUP, INC.;
DAVID O'NEAL, Northeast Regional Director,
Department of Homeland Security
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 3-16-cv-00026)
District Judge:  Hon. Kim R. Gibson
_____

Argued
March 24, 2020

Before:   JORDAN, RESTREPO, and GREENBERG, *Circuit Judges.*

(Opinion Filed: June 11, 2020)
_____

Stephen A. Fogdall   [ARGUED]
Schnader Harrison Segal & Lewis
1600 Market Street – Ste. 3600
Philadelphia, PA  19103
        *Counsel for Appellants*

Scott W. Brady
Laura S. Irwin  [ARGUED]
Thomas M. Pohl
Office of United States Attorney
700 Grant Street – Ste.4000
Pittsburgh, PA   15219
        *Counsel for Appellees, Charles E. Samuels, Jr.,*
        *Administrator Federal Bureau of Prisons,*
        *David O'Neal*

Thomas A. Specht  [ARGUED]
Marshall Dennehey Warner Coleman & Goggin
P.O. Box 3118
Scranton, PA  18505
        *Counsel for Appellees, George C. Wigen,*
        *Sean M. Kuta, Geo Group Inc.*

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

While confined at the Moshannon Valley Correctional Center ("MVCC"), a private prison operated by The GEO Group, Inc. under contract with the Federal Bureau of Prisons, Brian Davis was denied permission to marry his fiancée, Fredricka Beckford. The warden of MVCC at the time was George C. Wigen (together with GEO Group, the "GEO Defendants"), and he is the one who allegedly said no. In response, Davis and Beckford (the "Appellants") brought suit against the GEO Defendants and two federal officials, David O'Neal, the Northeast Regional Director for the Department of Homeland Security, and someone identified only by the title Federal Bureau of Prisons Administrator of the Bureau of Prisons Privatization Management Branch (the "BOP Administrator," and, together with O'Neal, the "Federal Defendants"). The Appellants assert various state and federal law claims against the GEO Defendants and the Federal Defendants, the gravamen of which is that the Appellants were denied the right to marry because of unlawful discrimination.

On consideration of a motion to dismiss by the GEO Defendants, a Magistrate Judge issued a Report and Recommendation (the "R&R") calling for the Appellants' claims against the GEO Defendants to be dismissed for failure to state a claim. The R&R also recommended, *sua sponte*, that the Appellants' claims against the Federal Defendants be dismissed because those defendants had yet to receive service of process. The District Court adopted the R&R in its entirety and, without further analysis, dismissed the Appellants'

3

lawsuit. The Appellants now argue that none of their claims were properly dismissed. We agree that certain claims against the GEO Defendants were wrongly dismissed and so too were the claims against the Federal Defendants. Accordingly, we will affirm in part, vacate in part, and remand the matter to the District Court for further proceedings.

## I.    BACKGROUND

### A.    Factual Background

While imprisoned at MVCC, Davis, a Jamaican national, requested permission to marry non-inmate Beckford, a U.S. citizen of Jamaican descent. According to the Appellants, MVCC imposed various requirements on those wishing to get married, above and beyond the requirements specified in Federal Bureau of Prisons regulations. The Appellants allege that, despite their having complied with all applicable requirements, including those additional ones imposed by MVCC, Wigen nevertheless denied their request to get married.

MVCC almost exclusively houses foreign nationals who have been ordered to be deported or are facing an impending immigration proceeding. The Appellants allege that the GEO Defendants and the Federal Defendants conspired to ensure that no inmate confined at MVCC can get married. The rationale behind the conspiracy, according to the Appellants, is that the Federal Defendants did not want inmates getting married because it could complicate, and perhaps stop, removal and other immigration proceedings. The GEO Defendants also allegedly benefit from the conspiracy because married inmates may more easily transfer to other facilities,

4

while the GEO Group has a financial interest in preventing those transfers and keeping MVCC's population as high as possible. The Appellants allege that, since the time the GEO Group began operating MVCC, no inmate has ever been allowed to marry while incarcerated there.

## B. Procedural History

The Appellants filed their original complaint on January 25, 2016, and it appears to have been refiled for some reason on February 8. Two weeks later, they filed an Amended Complaint, which is the operative pleading in this case. The Amended Complaint sets forth eleven claims, all predicated on the alleged unlawful deprivation of the Appellants' right to marry. For purposes of this appeal, the most significant claims are the demand for money damages pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the allegation that the defendants conspired to deprive them of their civil rights in violation of 42 U.S.C. § 1985(3), and the assertion that the defendants failed to adhere to the non-discrimination requirements of 42 U.S.C. §§ 1981, 1983, and 2000d.[1]

It is unclear whether, after the filing of suit, any summonses were issued. By early October 2016, none of the defendants had been served, and the District Court ordered Beckford to "take all necessary steps to serve Defendants in

---

[1] Appellants' other claims include breach of contract, intentional infliction of emotional distress, and violation of the U.S. Constitution, the Constitution of the Commonwealth of Pennsylvania, and certain federal anti-discrimination regulations. *See infra* n.12.

5

accordance with Rule 4 of the Federal Rules of Civil Procedure on or before November 6, 2016." (JA 18.) She did not comply, and on January 5, 2017, the Magistrate Judge issued a report and recommendation (an earlier one, not the R&R underlying the District Court decision now at issue) urging that the case be dismissed for failure to prosecute. The Appellants did not file any objections to that recommendation and, on March 15, 2017, the District Court adopted it and dismissed the case.

Within a week of the Court's dismissal order, Beckford moved to reopen the case. That motion was granted on June 21, 2017. In allowing the case to proceed, the Court warned that the "[Appellants'] failure to serve Defendants on or before August 4, 2017, w[ould] result in renewed dismissal of this case." (JA 95.) On July 31, the Appellants notified the Court that they had served all the defendants, and that O'Neal and the BOP Administrator had been served by sending them process at their work addresses via Federal Express and certified mail and, respectively. Counsel for the GEO Defendants filed a notice of appearance a week later, and, on August 31, the GEO Defendants moved to dismiss the Amended Complaint.

Notwithstanding the lack of an appearance by or answer from the Federal Defendants, the Appellants took no further action to perfect service on them until November. On the first of that month, an Assistant U.S. Attorney wrote the Appellants a letter informing them that they had failed to comply with the service requirements of Federal Rule of Civil Procedure 4(i). Two weeks later, the Appellants asked the District Court Clerk to issue additional summonses so that they could properly serve the Federal Defendants. Specifically, they asked for and received summonses directed at O'Neal and the BOP Administrator, addressed to the U.S. Attorney's Office for the

6

Western District of Pennsylvania and the Department of Justice. On December 13, 2017, the Appellants notified the Court that they had sent the additional summonses for the Federal Defendants "via USPS" to the U.S. Attorney's Office and to the Department of Justice. (JA at 158.)

Two days later, the Magistrate Judge filed the R&R. As earlier described, it recommended dismissal of the Appellants' lawsuit in its entirety. In suggesting that claims against the Federal Defendants be dismissed, the Magistrate Judge stated that the Appellants had not employed "means of service … authorized by Rule 4" when they used certified mail and Federal Express to effectuate their July 2017 attempt at service. (JA at 13.) The Magistrate Judge made no reference to the Appellants' subsequent efforts to effect service of process on the Federal Defendants, including their filing just two days earlier stating that they had mailed summonses for those officials to the pertinent government offices.

The Appellants objected to the R&R, arguing in part that the Magistrate Judge had failed to account for their substantial compliance with Rule 4. They did not argue before the District Court, nor do they argue now, that they fully complied with the requirements of Rule 4. While the R&R and the Appellants' objections were pending, the Federal Defendants, through the U.S. Attorney's Office, moved to extend the deadline to answer, plead, or otherwise respond to the Amended Complaint. With respect to service on the BOP Administrator, the motion invoked Rule 12(a)(2) and said that "a response to the Amended Complaint is due on or before January 29, 2018[,]" based on receipt of the Amended Complaint and summons on November 29, 2017. (JA at 205.) As to the propriety of service made on O'Neal, the motion

7

stated that counsel was "unaware whether service has been accomplished in accordance with Rule 4(i)(3)[.]" (JA at 205.) The Magistrate Judge granted the Federal Defendant's motion on January 29.

Despite that, the next day the District Court adopted the R&R, dismissed all claims against the GEO Defendants on the merits, dismissed the claims against the Federal Defendants for failure to prosecute, and ordered the case to be closed. The Court stated it had undertaken a "de novo review of the complaint and documents in the case[,]" but offered no independent analysis. (JA at 3.) The following day, the Federal Defendants moved to reopen the case so that they could file a motion to dismiss "in part, based on the fact that [Appellants] appear to have … failed to accomplish timely service – or service at all at least on the unnamed 'BOP Administrator.'" (JA at 211.) The District Court declined to reopen the case, noting that the Appellants had already filed an appeal.

## II.    DISCUSSION[2]

### A.    Dismissal of the *Bivens* Claim

The Appellants first challenge the District Court's dismissal of their claim for damages pursuant to *Bivens*. "The

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014). In

8

purpose of *Bivens* is to deter individual federal officers from committing constitutional violations" by subjecting them to personal liability. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). The Appellants specifically accuse the defendants of violating their constitutional right to marry.[3]   Based on the R&R, the District Court dismissed the *Bivens* claim against the GEO Defendants because, the Court said, those defendants are "private, not federal, actors."  (JA 12.)  We are deeply skeptical of that conclusion.

---

conducting such a review, we "take as true all the factual allegations of the … Amended Complaint and the reasonable inferences that can be drawn from them, but we disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (internal quotation marks and citations omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted).  "[W]e may affirm a judgment of a lower court for any reason supported by the record …." *In re Ross*, 858 F.3d 779, 786 (3d Cir. 2017).

[3] In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that prison inmates enjoy a constitutional right to marry, which can be restricted in favor of legitimate penological interests. *See id.* at 95 ("The right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration.").

9

"In the limited settings where *Bivens* does apply, the implied cause of action is the federal analog to suits brought against state officials under … 42 U.S.C. § 1983." *Ashcroft v. Iqbal*, 556 U.S. 662, 675–76 (2009) (internal quotation marks and citation omitted).  We have accordingly recognized that *Bivens* claims, like § 1983 claims, may reach private parties when they engage in the federal equivalent of "state action." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 801 (3d Cir. 2001); *cf. Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936–937 (1982) (permitting suit under § 1983 against private corporations exercising "state action").  The GEO Defendants operate private prisons on behalf of the federal government, which, among other responsibilities, entails overseeing and controlling the daily lives of the prisoners.  The performance of that function certainly appears to be the exercise of a right having its source in federal authority, by those who "could in all fairness be regarded as … federal actor[s.]"  *Philip Morris Inc.*, 250 F.3d at 801; *see also Pollard v. The GEO Grp., Inc.*, 629 F.3d 843, 857-58 (9th Cir. 2010) (concluding under the "public function test" that "the GEO employees act under color of federal law for purposes of *Bivens* liability"), *rev'd on other grounds sub nom. Minneci v. Pollard*, 565 U.S. 118, 132 (2012).[4]  Despite that, we will affirm the Court's dismissal of the *Bivens* claim because the Appellants are asking for an unsupportable extension of *Bivens* liability.

---

[4] The Supreme Court has not held that private prison operators cannot be liable for damages under *Bivens* because they are not "federal actors."  Both *Minneci* and turned on the separate and distinct question of whether the plaintiffs in those cases had alternative remedies to a *Bivens* claim available to them.

We engage in a two-step inquiry when deciding whether to extend the reach of *Bivens*. First, we ask "whether the request involves a claim that arises in a new context or involves a new category of defendants." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (internal quotation marks and citations omitted). Second, if there is a claim that has arisen in a new context, we "ask whether there are any special factors [that] counsel[l] hesitation about granting the extension." *Id.* (alterations in original) (internal quotation marks and citations omitted). "[I]f we have reason to pause before applying *Bivens* in a new context or to a new class of defendants[,]we reject the request." *Id.* Importantly, when conducting our *Bivens* analysis, we must be mindful of the Supreme Court's admonitions that "expansion of *Bivens* is a disfavored judicial activity," that "it is doubtful" that the outcome of *Bivens* would be the same if it were decided today, and that "for almost 40 years, [the Supreme Court] ha[s] consistently rebuffed requests to add to the claims allowed under *Bivens*." *Id.* at 472-73 (internal quotations marks and citations omitted).

Regarding the first step of the inquiry, the Appellants correctly "assume[]" that their *Bivens* claim, premised as it is on a violation of the right to marry, arises in a "new context." (Appellants' Opening Br. at 27 n.11.) The Supreme Court has never recognized, or been asked to recognize, a *Bivens* remedy for infringement of the right to marry. Accordingly, we turn to the inquiry's second step.

When we do, it is evident that there are "special factors" militating against extending *Bivens* to reach the Appellants' claim, particularly since that claim arises in a prison setting. Those factors include, but are not necessarily limited to, Congress's post-*Bivens* promulgation of the Prison Litigation

11

Reform Act of 1995 ("PLRA") [5] and the potential availability of alternative remedies to the Appellants, such as injunctive relief,[6] or relief under the Religious Freedom Restoration Act ("RFRA").[7]   Because "there are sound reasons to think

---

[5] *See  Ziglar v. Abbasi*, 137 S. Ct. 1843, 1865 (2017) (noting with respect to the PLRA that Congress "had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs[,]" but deliberately chose to "not provide for a standalone damages remedy against federal jailers" and that "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation" against extending *Bivens*).

[6] *See Ziglar* at 1862-63 (noting that the "damages or nothing" considerations underlying *Bivens* liability are not present in cases, such as this, where the Appellants "challenge large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners[,]" because "detainees may seek injunctive relief[,]" and that the Supreme Court also has "left open the question whether [detainees] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus").

[7] *See Ziglar* at 1858 ("For if Congress has created any alternative, existing process for protecting the [injured party's] interest that itself may amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.") (alterations in original) (internal quotation marks omitted); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (declining to extend *Bivens* to Muslim inmate's Free Exercise claim, alleging that he was subjected to anti-Muslim harassment from two

Congress might doubt the efficacy or necessity of a damages remedy" for interfering with an inmate's right to marry, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1848 (2017), no extension of *Bivens* is warranted here, and we will affirm the District Court's dismissal of the Appellants' *Bivens* claim.

### B. Dismissal of the Conspiracy Claim Under 42 U.S.C. § 1985(3)

Although the GEO Defendants did not request it in their motion to dismiss, the Magistrate Judge, *sua sponte*, recommended dismissal of the Appellants' discrimination claim pursuant to 42 U.S.C. § 1985(3). "Section 1985(3) permits an action to be brought by one injured by a conspiracy formed for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotation marks and citation omitted). According to the R&R, where "one or more" of the alleged conspirators "are private citizens," a § 1985(3) claim cannot be sustained unless the claim involves either the right to be free from involuntary servitude or the right to interstate travel. (JA 11 n.2.)

---

correctional officers, since there was an alternative remedial scheme available to inmate under the RFRA). The Appellants evidently believe they have a viable RFRA claim against the defendants and intended to seek leave on remand to further amend their Amended Complaint to include such a claim.

13

That conclusion, though, is flawed because the Supreme Court's jurisprudence regarding private conspiracies and the rights that can be vindicated under § 1985(3) pertains only to conspiracies that are *purely* private, that is, to conspiracies that do not involve any government actor at all. *See, e.g., Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993) ("[D]eprivation of [the federal right to abortion] cannot be the object of a purely private conspiracy."); *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833-34 (1983) (holding no § 1985 conspiracy claim against trades council, union and individual members for alleged infringement of First Amendment rights); *see also Philip Morris Inc.*, 250 F.3d at 805 (alleging conspiracy among private entities in and supporting the tobacco industry did not state viable claim under § 1985(3)). Even assuming that the GEO Defendants could rightly be regarded as private actors and not as government agents, the Appellants say that those defendants conspired with at least one of the Federal Defendants to deprive them – and, in fact, all of MVCC's inmates – of the constitutional right to marry, not based on legitimate penological interests but rather because of invidious discrimination. We agree that the Appellants have not alleged a purely private conspiracy, and, consequently, a basic premise of the District Court's decision on the availability of § 1985(3) relief was erroneous. We will accordingly vacate the dismissal of the Appellants' § 1985(3) claim, while noting that we are not opining on the merit of it. We are saying only that the rationale given for the order of dismissal presently before us was wrong.

We understand that the Appellants, now aided by counsel, intend on remand to seek leave to further amend their Amended Complaint. As that may be permitted and may affect

the contours of, and the allegations supporting, the Appellants' § 1985(3) claim, we will – with one limited exception – decline to address here the parties' additional arguments concerning the viability of that claim. The exception is the Federal Defendants' contention that our decision in *Bethea v. Reid*, 445 F.2d 1163 (3d Cir. 1971), forecloses any § 1985(3) claim against federal actors or those acting under color of federal law.

The Federal Defendants are correct that *Bethea* says § 1985(3) does not reach federal officers acting under color of federal law. *Id.* at 1164 (noting that the district court's rejection of plaintiff's § 1985 claim "was correct" because defendants "were federal officers acting under color of federal law"). But the opinion said so in a single sentence, and neither of the cases cited in support of that statement, *Jobson v. Henne*, 355 F.2d 129 (2d Cir. 1966), and *Norton v. McShane*, 332 F.2d 855 (5th Cir. 1964), stand easily for that proposition.[8] Importantly, *Bethea* makes no reference to *Griffin v. Breckenridge*, 403 U.S. 88 (1971), which the Supreme Court decided a few weeks earlier. In *Griffin,* the Supreme Court

---

[8] *Jobson* involved neither any claim under § 1985(3) nor any claim against federal actors. Rather, it addressed only a claim under § 1983 against state actors. *Jobson*, 355 F.2d at 131. And, although one of the claims at issue in *Norton* was brought pursuant to § 1985(3), the federal character of the defendants was irrelevant to the claim's disposition. Instead, the Fifth Circuit Court of Appeals affirmed the dismissal of that claim because the plaintiffs had failed "to allege facts amounting to intentional and purposeful discrimination to the plaintiffs individually or as members of a class." *Norton*, 332 F.2d at 863.

15

held that § 1985(3) can reach purely private conspiracies because the statute's failure to require the "deprivation to come from the State…. can be viewed as an important indication of congressional intent to speak in § 1985(3) of all deprivations of 'equal protection of the laws' and 'equal privileges and immunities under the laws,' *whatever their source*." *Griffin*, 403 U.S. at 97 (emphasis added). A significant consensus among our sister Courts of Appeals is that *Griffin* has rendered untenable the argument that § 1985(3) is inapplicable to those acting under color of federal law.[9]

Since the decisions in *Griffin* and *Bethea* were rendered in close succession, it is quite possible that the failure to mention – let alone analyze the application of *Griffin* in *Bethea* – was unintentional. Whatever the reason, however, that failure to address significant and likely dispositive Supreme Court precedent prompts us to conclude that *Bethea* does not constitute binding precedent on the issue of whether a claim under § 1985(3) can be brought against federal actors. *See United States v. Tann*, 577 F.3d 533, 542 (3d Cir. 2009) (declining to apply ostensibly binding precedent because the opinion in question did not address pertinent Supreme Court

---

[9] *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Ogden v. United States*, 758 F.2d 1168, 1175 n.3 (7th Cir. 1985); *Hobson v. Wilson*, 737 F.2d 1, 19 (D.C. Cir. 1984), *overruled in part on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993); *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980); *Dry Creek Lodge, Inc. v. United States*, 515 F.2d 926, 931 (10th Cir. 1975).

authority and was inconsistent with that authority).  Indeed, not only have we never cited *Bethea* for the principle that § 1985(3) is inapplicable to federal actors, we have suggested precisely the opposite.  *See Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989) (reversing dismissal of complaint under 28 U.S.C. § 1915(d) because, in part, "appellant may have stated a claim for conspiracy under § 1985" against various federal probation and parole officials).  Accordingly, we join  many of our  sister  Circuits  in  holding  that  §  1985(3)  can  redress conspiracies  to  violate  constitutional  rights  involving  those acting under color of federal law.

## C.  **Dismissal on the Merits of Additional Claims**

The  District  Court  also  dismissed  on  the  merits  the Appellants'  claims  brought  pursuant  to  42  U.S.C.  §§  1981, 1983 and 2000d.[10]  There was no error in that.

Claims under Section 1983 require action taken under color of state, not federal law. *See Philip Morris Inc.*, 250 F.3d at 800 (noting that Section 1983 "is addressed only to the state and to those acting under color of state authority" and that "[i]t is well established that liability under § 1983 will not attach for actions  taken  under  color  of  federal  law.")    All  of  the

---

[10] As relevant to the Appellants' claims, Section 1981 prohibits discrimination in the making and enforcement of contracts  on  the  basis  of  race;  Section  1983  prohibits  state actors  from  depriving  any  individual  of  their  constitutional rights; and Section 2000d prohibits discrimination by programs or activities receiving federal financial assistance on the basis of race, color, or national origin.

defendants here, however, are alleged to be federal actors or to have acted under color of federal law, so the 1983 claim cannot stand.

Nor can the Appellants' Sections 1981 and 2000d claims. Those require allegations of discrimination based on color or race, or, in the case of § 2000d, national origin.[11] Even accounting for the Appellants' *pro se* status at the time they filed the Amended Complaint, their pleading is devoid of allegations plausibly stating a claim for discrimination based on race, color, or national origin. According to the Amended Complaint, all inmates housed at MVCC, irrespective of their race, color, or national origin, have been wrongfully deprived of the right to marry. It was proper, then, to dismiss those claims.

---

[11] *See Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) ("Ordinarily, to establish a basis for relief under section 1981 a plaintiff must show (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981.") (internal quotation marks and citation omitted); *Scelsa v. City Univ. of N.Y.*, 806 F. Supp. 1126, 1140 (S.D.N.Y. 1992) ("'The two elements for establishing a cause of action pursuant to [§ 2000d] are (1) that the entity involved is engaging in racial or national origin discrimination and (2) the entity involved is receiving federal financial aid.'") (quoting *Jackson v. Conway*, 476 F. Supp. 896, 903 (E.D.Mo. 1979), *aff'd* 620 F.2d 680 (8th Cir. 1980)).

In contrast, however, the District Court dismissed several claims against the GEO Defendants that those defendants did not move to dismiss and that neither the District Court's opinion nor the R&R on which it was based addressed at all.[12] Consequently, we will vacate the District Court's dismissal of those claims, while affirming the dismissal of the claims under 42 U.S.C. §§ 1981, 1983 and 2000d.

### D. Dismissal of Claims for Failure to Prosecute[13]

Finally, the District Court also dismissed the claims against the Federal Defendants on the procedural ground that the Appellants had failed to properly serve them with process in accordance with Rule 4 of the Federal Rules of Civil Procedure. That order of dismissal, based on the Magistrate

---

[12] Those claims include ones brought pursuant to the Equal Protection Clause of the U.S. Constitution; 45 C.F.R. § 3.6 (prohibiting discrimination in use of facilities that are "of a public nature"); 28 C.F.R. §42.104 (prohibiting discrimination in programs receiving federal financial assistance); article I, section 26 (misidentified as Article I, Section VI in the Amended Complaint) of the Constitution of the Commonwealth of Pennsylvania (prohibiting the Commonwealth from discriminating against any person for exercising their civil rights); as well as claims under Pennsylvania law for intentional infliction of emotional distress and breach of contract.

[13] We review dismissals for failure to prosecute or to comply with a court order for abuse of discretion. *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002).

Judge's *sua sponte* recommendation, was not a proper exercise of discretion.

"The determination whether to extend time [under Rule 4(m) of the Federal Rules of Civil Procedure] involves a two-step inquiry. The district court first determines whether good cause exists for a plaintiff's failure to effect timely service. If good cause exists, the extension must be granted. If good cause does not exist, the district court must consider whether to grant a discretionary extension of time." *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997) (internal citations omitted).

The Magistrate Judge, and the District Court by virtue of its adoption of the R&R, did not undertake either of those required steps. The Court did not address the Appellants' December 2017 statement detailing their further efforts to effectuate service on the Federal Defendants, and likewise failed to take note of the Federal Defendants' post-R&R request for an extension of time to respond to the Amended Complaint, which relief the Magistrate Judge actually granted. The Federal Defendants apparently were willing to proceed with the case in some manner and, but for the order of dismissal, may have been willing to waive defects in the service of process. That remains to be seen, though their late-filed motion to reopen the case only to seek dismissal indicates otherwise. In the meantime, we will vacate the District Court's dismissal of the claims against the Federal Defendants.

## III.    CONCLUSION

For the foregoing reasons, we will affirm in part and vacate in part the District Court's dismissal of the Appellants' claims against the GEO Defendants, vacate the District Court's

20

dismissal of the Appellants' claims against the Federal Defendants for failure to prosecute, and remand this case for further proceedings.