**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3244
_____

TERRANCE PETERSON,
Appellant

v.

SECRETARY UNITED STATES DEPARTMENT OF VETERANS AFFAIRS

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1:16-cv-00160)
District Judge:  Honorable Leonard P. Stark

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 23, 2021
Before:  MCKEE, SHWARTZ and RESTREPO, Circuit Judges

(Opinion filed: May 25, 2021)
_____

OPINION[*]
_____

PER CURIAM

Terrance Peterson, proceeding pro se, appeals from an order of the United States

District Court for the District of Delaware granting the defendant's motion for summary

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

judgment in this employment discrimination action.  For the reasons that follow, we will affirm the District Court's judgment.

Within 90 days of receiving a right to sue letter from the Equal Employment Opportunity Commission, see 42 U.S.C. 2000e-5(f)(1), Peterson filed a complaint, which he twice amended with the District Court's leave, raising various claims related to his suspension and termination from his job as a Healthcare Technician in the Ear, Nose, and Throat Specialty Clinic at the Wilmington Veterans Affairs Medical Center (WVAMC). Peterson's complaints included claims of race and disability discrimination, retaliation, and a hostile work environment.  (ECF 2, 19, 27.)  The Secretary of the Department of Veterans Affairs (the Secretary) moved to dismiss those claims.  (ECF 13, 23, 30.)  The District Court granted those motions as to all of the claims, with the exception of Peterson's allegations of retaliation.  (ECF 17 & 18, 25 & 26, 32 & 33.)  As to that claim, the Secretary filed a motion for summary judgment.  (ECF 37.)  The District Court granted that motion, holding that Peterson failed to establish that there was a causal connection between his protected activity and the adverse employment actions; that the Secretary proffered legitimate, non-discriminatory reasons for taking those actions; and that Peterson failed to show that the Secretary's non-discriminatory reasons were mere pretext for discrimination.  (ECF 41 & 42.)  Peterson appealed.  (ECF 43.)

We have jurisdiction under 28 U.S.C. § 1291 and exercise de novo review over the District Court's order granting summary judgment.[1]  See S.H. ex rel. Durrell v. Lower

---

[1] We also exercise de novo review of orders granting motions to dismiss.  Davis v. Samuels, 962 F.3d 105, 111 n.2 (3d Cir. 2020).  Peterson's notice of appeal did not

Merion Sch. Dist., 729 F.3d 248, 256 (3d Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[w]e view the facts and draw all reasonable inferences in the non-movant's favor," we will conclude that "[a] disputed issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 871 n.3 (3d Cir. 2015) (citation and quotation marks omitted).

---

indicate that he sought to appeal from the orders granting the Secretary's motions to dismiss. Fed. R. App. P. 3(c)(1)(B) (requiring that a notice of appeal "designate the judgment, order, or part thereof being appealed"). Although we construe notices of appeal liberally, Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 184 (3d Cir. 2010), here we agree with the Secretary's unchallenged contention that Peterson's intention to appeal from the orders granting the motions to dismiss is not apparent. See Appellee's Br., 26-27; Sulima, 602 F.3d at 184 ("[W]e can exercise jurisdiction over orders not specified in the Notice of Appeal if: '(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues.'") (citation and quotation marks omitted). Peterson's brief refers in passing to claims raised in his original complaint, arguments that he put forth in opposition to the Secretary's motions to dismiss, and some of the opinions granting those motions. See Appellant's Br., 3, 6-8. But he does not argue that the District Court erred in granting the motions to dismiss. Instead, Peterson's brief focuses on the District Court's grant of the Secretary's motion for summary judgment. See M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020) (holding that claims were forfeited where appellant failed to raise them in her opening brief); Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 145-46 (3d Cir. 2017) ("[W]e have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing."). Even if we were to consider the orders granting the motions to dismiss, we would affirm because, for the reasons provided by the District Court, Peterson failed to state claims for relief based on alleged violations of 18 U.S.C. § 241 and 42 U.S.C. § 14141 (ECF 17, at 8), due process violations (ECF 17, at 8-9), violations of the Uniformed Services Employment and Reemployment Rights Act (ECF 25, at 10-11), a hostile work environment (ECF 32, at 6-7), and age, race, and disability discrimination (ECF 25, at 11, ECF 32, at 6-8).

Peterson brought his retaliation claim under Title VII of the Civil Rights Act of 1964. We analyze that claim according to the familiar burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Moore v. City of Phila., 461 F.3d 331, 340-42 (3d Cir. 2006). Under the McDonnell Douglas framework, Peterson had the initial burden of establishing a prima facie case of retaliation. See McDonnell Douglas, 411 U.S. at 802. If he succeeded, the burden then would shift to the Secretary to "articulate some legitimate, nondiscriminatory reason" for his suspension and termination. See id. Peterson would then have an opportunity to prove by a preponderance of the evidence that the legitimate reason for his suspension and termination offered by the Secretary was a pretext. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999); Moore, 461 F.3d at 342. We will assume, without deciding, that Peterson can establish a prima facie case of retaliation. Nevertheless, the District Court properly held that the Secretary articulated legitimate, nondiscriminatory reasons for Peterson's suspension and termination, which Peterson failed to rebut.

The Secretary presented evidence indicating that Peterson was suspended because of two encounters that involved serious disruptive, inappropriate, and threatening behavior. In September 2013, Peterson was ordered to attend five anger management sessions with Albert Marks, a certified anger management facilitator.[2] Mem. of Sept. 10,

---

[2] Participation in the anger management classes was required because the Administrative Investigation Board (AIB) had concluded, in June 2013, that Peterson "demonstrated disruptive and inappropriate behavior whereas his actions are perceived as threats of physical violence, harassment, intimidation, and other threatening behaviors." AIB Report of Investigation, 6 (J.A. 329).

4

2013 (J.A. 331). Peterson had arrived late for the first session. Decl. of Albert Marks, ¶ 3 (J.A. 337). When Marks pointed out Peterson's tardiness, Peterson responded in a way that Marks perceived to be hostile. Id. Marks attempted to talk with Peterson about the aggression, but Peterson drove away. Id. After this encounter, Marks notified the WVAMC via email of the encounter and stated that he did not think that he could assist Peterson. Id.

Shortly after Peterson left the anger management facility, he "aggressively entered" the office of Cynthia Brown, a Human Resources Specialist at WVAMC.[3] Decl. of Cynthia Brown, ¶ 8 (J.A. 334). Peterson demanded that Brown find him a new anger management facilitator, and became "very angry and even louder" when she tried calm him down. Id. Brown stated that she felt threatened by Peterson and recalled "looking around my office to determine how I could get out of it if he continued to threaten me." Id. Brown's account was confirmed by a Human Resources Assistant at the WVAMC. Decl. of Karen Newson, ¶ 1-3 (J.A. 342).

Reports of Peterson's interactions with Marks and Brown were provided to Ruthann Wolski, Peterson's second-level supervisor, who recommended that Peterson be suspended for 10 days. Decl. of Ruthann Wolski, ¶ 2 (J.A. 345). Although Wolski was aware that Peterson had previously filed EEOC complaints, Wolksi stated that in proposing the suspension she did not consider those filings or his statements that he had

---

[3] Although this was the first time that Brown met Peterson in person, Peterson had previously called Brown several times. During several of those conversations, Peterson used a "loud and angry voice," spoke in "an inappropriately loud tone," and sounded "very angry and loud." Decl. of Cynthia Brown, ¶ 4-5, 7 (J.A. 333-34).

5

engaged in protected activity. Id. at ¶ 4. Instead, she based her recommendation on Peterson's "very serious misconduct" in his interactions with Marks and Brown, as well as Peterson's "history of receiving written counseling." Id. at ¶ 2. The final decision maker, Mary Alice Johnson, determined that a 10-day suspension was appropriate. Decl. of Mary Alice Johnson, ¶ 2 (J.A. 351). In making her determination, Johnson "reviewed the evidence file that Human Resources prepared, heard [Peterson's] oral response, and reviewed his written reply" to the notice of the proposed suspension. Id. Like Wolski, Johnson stated that she did not consider Peterson's prior EEOC complaints. Id. at ¶ 4. Peterson was suspended from December 2, 2013, through December 11, 2013. Letter of November 5, 2013 (J.A. 355).

Evidence also demonstrated that Peterson was terminated because he performed medical procedures outside the scope of his qualifications and continued to threaten staff at the WVAMC. Peterson was not permitted to clean patients' ears because he lacked the training and certification to do so. Decl. of Ruthann Wolski, ¶ 6 (J.A. 346). In February 2013, Peterson's first-level supervisor, Vanessa Covington, warned him in writing that irrigating a patient's ears was beyond the scope of his duties. Mem. of Feb. 21, 2013 (J.A. 357); Decl. of Vanessa Covington, ¶ 3 (J.A. 359). Despite that warning, Peterson cleaned a patient's ears on October 25, 2013. Decl. of Betty Reeves, ¶ 2 (J.A. 362); Decl. of Vanessa Covington, ¶ 4 (J.A. 359-60); Decl. of Ruthann Wolski, ¶ 6 (J.A. 346).

On November 13, 2013, an inventory technician named Mac Benjamin told Covington that Peterson was "crazy," warned her several times that she should be careful, and stated that Peterson "really hates Dr. Abdou and wants to cut him up." Decl. of

6

Vanessa Covington, ¶ 4 (J.A. 359-60); Decl. of Mac Benjamin, ¶ 2 (J.A. 372-73).  Later that month, Peterson threatened to sue Marks over the email that Marks had sent to the WVAMC about his September 2013 encounter with Peterson.  Decl. of Albert Marks, ¶ 4 (J.A. 337-38).  On December 17, 2013, Peterson told his union steward, Johnel Ponzo, that he was going to "hurt all of those motherfuckers."  Decl. of Johnel Ponzo, ¶ 3 (J.A. 381).  Although Ponzo had heard Peterson make similar comments in the past, Ponzo stated that "this time [Peterson] seemed different," that he "had a distant look in his eyes that made me uncomfortable," and that "I was afraid from [Peterson's] tone and demeanor … that he could do exactly what he said he was going to do."  Id.

After receiving reports of these incidents, Johnson recommended that Peterson be terminated.  Decl. of Mary Alice Johnson, ¶ 5 (J.A. 352).  Johnson concluded that Peterson had provided care outside the scope of his duties and that his "actions could have led to serious complications with the patient."  Id.  She also concluded that Peterson had made "threats to the safety and well-being of our staff."  Id.  Noting that Peterson had already received a 10-day suspension for misconduct and that he had been explicitly warned not to clean patients' ears, Johnson found that Peterson demonstrated "a blatant disregard for management's efforts to rehabilitate him to keep him functioning in his position."  Id.  Johnson stated that she did not consider Peterson's EEOC filings or his statements that he had engaged in protected activity.  Id. at ¶ 7.  The Director of the WVAMC, Robin Aube-Warren, determined that "there was sufficient evidence that proved that [Peterson] had committed the misconduct charged."  Decl. of Robin Aube-Warren, ¶ 3 (J.A. 402).  Aube-Warren also concluded that Peterson's misconduct was

7

"intentional, repeated, and that [his] prior discipline had not corrected his behavior." Id. at ¶ 4. She stated that she did "not recall being aware" of any protected activity by Peterson. Id. at ¶ 5-10. Accordingly, Aube-Warren notified Peterson that she sustained the charges against him and that his termination was effective April 25, 2014. Letter of Apr. 21, 2014 (J.A. 244-46).

Peterson has not identified a material issue of fact demonstrating that the Secretary's proffered reasons for his suspension and termination were a pretext for discrimination. To establish pretext under the summary judgment standard, a plaintiff must either (1) offer evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication," or (2) present evidence sufficient to support an inference that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). Peterson asserts, without any evidentiary support, that "the agency … falsely accus[ed] [him] of threats which shows pretext to conjure up false allegations." Appellant's Br., 18. This type of speculation cannot defeat summary judgment. See Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014). Moreover, it is not sufficient to "show that the employer's decision was wrong or mistaken" because "the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. On this record, the Secretary's proffered reasons for suspending and terminating Peterson were neither "weak, incoherent, implausible, [n]or so inconsistent" that a reasonable juror could find

8

them unworthy of credence.  See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 800 (3d Cir. 2003) (per curiam).  Thus, no reasonable juror could conclude that retaliation for engaging in protected activity was the likely reason for the adverse employment actions.

In sum, Peterson failed to produce sufficient evidence to create a triable issue of fact for his retaliation claim under Title VII.  We have considered his various arguments and conclude that none has merit.  Thus, we will affirm the District Court's judgment.