**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3717
_____

HARRY L. BECKETT,
Appellant

v.

T. GRANT; COUNSELOR  WILSON; CHCA  KOWALEWSKI; RN SCHROCK;
DR. DANCHA; DR. MIHALY; DR. FROMMER; SGT. BUB; JOSEPH J. SILVIA,
Director; CO SAVINO; DOC/SCI LAUREL HIGHLAND; DOC/SCI SMITHFIELD;
DOC/SCI HUNTINGDON; PAULA PRICE, CHCA/RN; UNIT MANAGER B BLOCK;
B BLOCK COUNSELOR; DOC OFFICE OF POPULATION MANAGEMENT;
DOC BUREAU OF HEALTH CARE SERVICES

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:18-cv-00329)
District Judge:  Honorable Sylvia H. Rambo

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 27, 2022
Before:  GREENAWAY, JR., PORTER and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  February 17, 2022)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Harry L. Beckett, a Pennsylvania prisoner, appeals pro se from an order of the District Court granting the defendants' motions to dismiss his civil rights action. For the following reasons, we will affirm in part, vacate in part, and remand to the District Court for further proceedings.

I.

In December 2018, Harry L. Beckett filed a second amended civil rights complaint under 42 U.S.C. § 1983. (ECF 22). He complained about inadequate housing conditions, about the denial of medical care, and about retaliatory transfers between prisons. Beckett named as defendants prison doctors (the medical defendants), as well as Department of Corrections (DOC) staff, the DOC Bureau of Health Care Services and the DOC Office of Population Management, and three DOC prisons, namely, SCI Laurel Highlands, SCI Smithfield, and SCI Huntingdon (the DOC defendants). The medical and DOC defendants filed separate motions to dismiss. (ECF 36 & 37; 38 & 39). The District Court granted those motions, holding that Beckett failed to state a claim upon which relief could be granted. (ECF 54 & 55.) Beckett appealed.[1] (ECF 57.)

_____

[1] Although Beckett's notice of appeal was filed 31 days after the District Court entered its order dismissing the complaint, see Fed. R. App. P. 4(a)(1)(A), the District Court subsequently granted Beckett's request for an extension of time to appeal, see Federal Rule of Appellate Procedure 4(a)(5), and deemed his appeal timely filed. (ECF 64.)

2

## II.

We have jurisdiction under 28 U.S.C. § 1291 and exercise de novo review over the District Court's order granting the defendants' motion to dismiss. Davis v. Samuels, 962 F.3d 105, 111 n.2 (3d Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (citations and internal quotation marks omitted). We accept all factual allegations in the complaint as true and construe those facts in the light most favorable to the plaintiff. See Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012).

## III. Conditions of Confinement

To establish an Eighth Amendment violation with respect to conditions of confinement, a prisoner must show that he has been deprived of "the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 832, 834 (1994) (citations and internal quotation marks omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim, Hudson v. McMillen, 503 U.S. 1, 8-9 (1992), such as when a prisoner has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault. Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997). In addition, the prisoner must demonstrate that the defendants acted with deliberate indifference, *i.e.*, that prison officials knew of and disregarded a substantial risk of serious harm. See Farmer, 511

3

U.S. at 837.

Beckett complained about several conditions at the prisons where he was incarcerated. The District Court rejected these claims, essentially holding that Beckett failed to state a claim because the alleged deprivations were not sufficiently serious to violate the Eighth Amendment. See Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (stating that the Eighth Amendment does not guarantee comfortable incarceration); see also Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) (explaining that "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment"). That conclusion was erroneous in several respects. See Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 373-74 (3d Cir. 2019) (explaining that "[c]onditions . . . alone or in combination[] may deprive inmates of the minimal civilized measure of life's necessities," and "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise").

Beckett, who has medical conditions that make him particularly sensitive to cold temperatures, claimed that he was housed in an air-conditioned unit without access to warm clothes or blankets. Am. Compl., 2 (ECF 22.) The District Court held that it could not "conclude from the second amended complaint, as pled, that [Beckett's] placement in

4

air-conditioned units qualifies as cruel and unusual punishment in violation of the Eighth Amendment." (ECF 54, at 15.) In support of that conclusion, the District Court stated that Beckett "admits that he was able to wear a winter coat, hat, gloves, and sweat suit as needed and that he was able to warm up his clothing using the dryers in the laundry room." (Id.) But Beckett mentioned the warm clothes only to demonstrate that he was not allowed to wear them after he was transferred to a new prison. (ECF 22, at 4 (noting that he had been "DENIED ALL PREVIOUS … SUPPORT").) The District Court also held that "nothing in [Beckett's] second amended complaint plausibly suggests that Defendants knew of … a risk [to his health] and deliberately ignored that risk. (ECF 54, at 15.) Beckett alleged, however, that the defendants were "fully aware [that] being exposed to AC controlled atmospheres worsens/advances [his] longstanding and historic – preexisting – DVA [Department of Veterans Affairs] disabilities …." (ECF 22, at 4.)

In addition, Beckett asserted that his constitutional rights were violated at SCI Smithfield because he had to "endure inclement weather conditions" to go to the law library, medical facilities, and "chow hall." (ECF 22, at 6; ECF 52, at 29.) The District Court rejected that claim, again relying on Beckett's access to warm clothes and the absence of assertions that the defendants knew of a risk to his health and ignored it. (ECF 54, at 16.) But this conclusion ignores Beckett's claim that his underlying medical conditions – including complex regional pain syndrome – are affected by cool temperatures. (ECF 52, at 4, 27.) Indeed, although the DOC Appellees assert that

5

Beckett "did not allege any facts which support the conclusion that he was forced to live in an intolerably cold environment" (Doc. 57, at 16), Beckett specifically asserted that "cool/cold weather or temperature exposure worsens his pain and limit[s] his mobility." (ECF 52, at 4.)

Furthermore, Beckett complained that his "Z-Code" status, which applies to inmates who need to be housed in a single cell rather than with a cellmate, was not "reinstat[ed]." (ECF 22, at 4.) The District Court held that "[n]othing in the second amended complaint suggests that Defendants had any knowledge that failure to reinstate [Beckett's] Z-Code status would pose an excessive risk to his health or safety and that they disregarded this risk" or that Beckett's "medical conditions were exacerbated by the lack of single-cell status." (ECF 54, at 18.) Beckett alleged, however, his Z-Code status was "longstanding" and that it had been necessitated by, among other things, brain damage, memory loss, and post-traumatic stress disorder. (ECF 22, at 3.) He further explained that "the DOC had advance knowledge of [his Z-Code status] since thereabouts November 1992 … because of his chronic pain, need of heat by bird-bathing and vulnerability to other Inmates." (ECF 52, at 4 n.3.) Under these circumstances, the District Court erred in granting the defendants' motions to dismiss Beckett's claim based on the revocation of his Z-code status.

## IV.    Medical Needs

To succeed on an Eighth Amendment medical needs claim, "a plaintiff must make

6

(1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  Beckett suggested that the defendants failed to implement medical recommendations made by the Department of Veterans Affairs during a "tele-med video examination," failed to order follow-up treatments at the Blair Medical Center, and failed to adhere to his "current treatment plan" and "Inmate Disability Accommodation Request."  (ECF 22, at 4-5.)  The District Court held that Beckett failed "to set forth facts regarding what concerns these Defendants allegedly disregarded, what treatment he believes he needed from the Blair Medical Center, and how they failed to follow his Inmate Disability Accommodation Request."  (ECF 54, at 21.)  Beckett explained, however, that his current treatment plan addresses conditions related to his "neurological, muscular and skeleton systems."  (ECF 52, at 19.)  He suggested that at one point his untreated conditions caused him to lose consciousness.  (ECF 22, at 5.)  He also asked for reinstatement of prior accommodations, such as a walking cane, soft cervical neck collar, and an abdominal binder.  (ECF 22, at 7.)  He also claimed that the defendants were "fully aware" of his medical conditions.  (ECF 22, at 4.)  We conclude that these allegations state an Eighth Amendment medical needs claim.

## V.     Retaliation

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks omitted) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).  The District Court held that Beckett "fail[ed] to adequately allege any facts suggesting that he was engaged in constitutionally protected conduct to support a retaliation claim against Defendants" and failed "to assert any facts to causally connect Defendants' alleged actions to any protected activity."  (ECF 54, at 12.)  We conclude, however, that Beckett's allegations of retaliation, liberally construed, were sufficient to survive the defendants' motions to dismiss.  Specifically, he alleged that he was transferred between prisons because he filed grievances about his conditions of confinement and medical care.  (ECF 22, at 3, 6.)  Beckett further suggested that, prior to the "retaliatory …transfer," he heard the defendants make comments like, "He thinks he's special!  We'll show him."  (ECF 22, at 5.)  These allegations support a viable retaliation claim.[2]  See Rauser, 241 F.3d at 333; see Watson v. Rozum, 834 F.3d 417,

---

[2] Although the District Court did not comment on whether the transfer between prisons constituted an adverse action, we note that Beckett indicated that he was moved to a "lessor" prison where he did not receive the same level of medical care.  (ECF 22, at 6); see Allah v. Seiverling, 229 F.3d 220, 225-26 (3d Cir. 2000).

8

422-23 (3d Cir. 2016) (holding that submission of grievances is constitutionally protected conduct).

### VI.   Other Grounds for Dismissal

We agree that the District Court properly invoked other grounds for dismissal of Beckett's complaint. For instance, Eleventh Amendment immunity applies to the DOC facilities and its Bureau of Health Care Services and the DOC Office of Population Management. (ECF 54, at 8-9); Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (stating that states and state agencies are immune from suit for monetary damages in federal court). Furthermore, to the extent that Beckett sought to assert violations of the Americans with Disabilities Act (ADA) and the Health Insurance Portability and Accountability Act (HIPAA), his claims fail. As the District Court explained, he did not allege that he was excluded from a DOC program based on a disability, see 42 U.S.C. § 12132 (providing that to establish a violation of Title II of the ADA, a plaintiff must demonstrate, among other things, that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities), and HIPAA does not provide a private cause of action. See Meadows v. United Servs., Inc., 963 F.3d 240, 244 (2d Cir. 2020). In addition, Beckett failed to allege any personal involvement by one of the medical defendants, Dr. Frommer. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Finally, as to these claims, it does not appear that the District Court abused its discretion in denying Beckett leave to

amend his complaint on grounds of futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002) (indicating that a district court should give a plaintiff leave to amend unless amendment would be inequitable or futile).

VII.

For the foregoing reasons, we will affirm the District Court's judgment in part and vacate in part and remand for further proceedings.